## LODEWYCK *v.* LACROIX.[1]

1. DEEDS—MENTAL COMPETENCY—UNDUE INFLUENCE.

Mental incompetency and undue influence over decedent, whereby the execution of conveyances was secured in favor of an invalid daughter to the disadvantage of the other children, is not established by evidence that decedent entertained a dislike for one of her sons-in-law, and feared that he might succeed to any interest conveyed to his wife, and that she was very ill at the time the papers were signed, where it does not appear that the grantee influenced decedent to form a dislike for her son-in-law, or that the instruments were executed for any other reason than to carry into effect an expressed intention of placing the invalid daughter, who had received less in advances than the other children, where she would be above want.

2. SAME—UNCONDITIONAL GRANT—RIGHT OF EQUITY TO IMPOSE TRUST IN FAVOR OF INSANE DEPENDENT.

A court of equity has no right to impose a trust upon property unconditionally conveyed by a decedent in her lifetime to one of her daughters, in favor of an insane daughter, merely because the decedent had been accustomed to pay such daughter's expenses at an asylum.

Appeal from Wayne; Donovan, J.   Submitted October 8, 1897.   Decided January 25, 1898.

Bill by Emily Lodewyck, by Peter J. Lodewyck, her guardian, against Susan Adele Lacroix and others, to set aside certain conveyances.   From a decree sustaining the conveyances, but imposing a trust in favor of complainant upon certain portions of the property, defendants appeal.   Reversed, and bill dismissed.

*Durfee, Allor & Marston* (*Byron R. Erskine*, of counsel), for complainant.

*John W. McGrath*, for defendants.

[1] Rehearing denied April 5, 1898.

MONTGOMERY, J.   Mary A. E. Lacroix, shortly before her death, in June, 1891, was possessed of a large estate, amounting to about $100,000, most of which she had inherited from her father.   Her husband had recently deceased, leaving a considerable estate, $20,000 of which had been distributed among the children hereinafter named, in equal parts.   After the decease of Mrs. Lacroix, this bill was filed by the guardian of Emily Lodewyck, a daughter of Mrs. Lacroix, setting up that deeds had been recorded to all the real estate formerly belonging to Mrs. Lacroix, and that it was claimed that a bill of sale had also been executed, transferring the personal property; that both the deeds and bill of sale were made to Susan Adele Lacroix. The bill alleges, among other things, that the purported conveyances were forgeries; and also, if they were actually signed by deceased, that they were executed when she was not in her right mind, and that she was unduly influenced to make them.   There is no evidence to sustain the charge of forgery.   On the contrary, we are fully satisfied of the execution and delivery of these instruments.   The questions which have raised some doubt in our minds, and which have caused some hesitation in pronouncing judgment, are those relating to the mental competency and free agency of Mrs. Lacroix.

The immediate family of the deceased consisted of three daughters and two sons, viz.:  Complainant, then an inmate of an asylum; Henry Lacroix, who had been married and settled in life a number of years; Elmira Dazell, also married, and living in Canada; James E. Lacroix, the youngest, then about 26 years of age; and Susan Adele, unmarried and an invalid, 35 years of age, living at home with her mother and brother James.   It appears that Mrs. Lacroix had made advances to each of the children, except Susan, amounting to about $10,000 each. There was testimony tending to show that Mrs. Lacroix felt unkindly towards Mr. Lodewyck, complainant's husband, and that this feeling was of long standing, and in no way traceable to any influence over her of any of the

defendants. There is also, as we think, abundant testimony establishing the mental competency of the deceased. The witnesses who have no interest in the result of this litigation testify that, while deceased was very ill at the time the papers were executed, she appeared to understand their import; and this testimony, as we shall see later on, was corroborated by the testimony of complainant's principal witness. To make the case for complainant, Susan and James were put upon the stand, and both testified that their mother acted freely, and executed the papers to carry into effect an expressed intention of placing Susan in a position where she would certainly be above want. This testimony as to her intention was corroborated by her brother-in-law, John B. Gravier, and by the scrivener.

Complainant's counsel cite some circumstances which are claimed to be opposed to the theory of the defendants, and have offered some testimony which is claimed to show opportunity for undue influence, and to point to its exercise. The most important witness for complainant was Lulu Lodewyck, a young lady about 20 years of age at the time of the dealings in question. She gave some testimony to facts which raised suspicions of unfair dealing; but the facts and circumstances detailed by her are not, we think, sufficient to overcome the positive proof offered by defendants,—particularly in view of her own testimony, which, in some important respects, corroborates defendants' claim. This witness was present when the deeds were executed, and on cross-examination testified:

" *Q.* When she did sign those deeds, she listened to Mr. Belanger, when he was reading them to her, didn't she, and appeared to understand what he was reading ?
" *A.* I guess so; yes."

The witness also testified, on cross-examination, as follows:

" *Q.* She told you she intended to give your Aunt Susan more than she did the others ?
" *A.* She told me she intended to give her the rest of everything, ' because,' she says, ' you know she will never

marry, and, if she dies, it will come back to the family again.' That is what she told me two or three times. She wanted us to understand that she was to get that more than the rest, and all the personal property."

This corroborates the testimony of defendants that deceased entertained the purpose of vesting this property in Susan. It is contended that this purpose was formed, if at all, because of a false apprehension that Mr. Lodewyck would inherit a share of whatever came to his wife in case he survived her, and there appears to have been such an impression on her mind. We are not convinced, however, that defendants had sought to impress this upon her mind, nor that it influenced her in making the conveyance, as she treated the other children the same as she did Emily, in making the conveyance. On the whole, we think the evidence preponderates in favor of the defendants.

The circuit judge reached this conclusion on the facts, but also found that a trust existed in favor of complainant, and provided in the decree that the rents and profits of one piece of real estate should be devoted to the support of complainant during her lifetime. We cannot find in the testimony any authority for imposing this trust upon the property in question. It is true, the deceased, in her lifetime, paid the complainant's expenses at the asylum; but there is no express condition attached to the conveyance, either orally or in writing; and, however much of natural equity there may be in the result reached by the circuit judge, we see no warrant for modifying the contract which the parties have made.

The decree will be reversed, and the bill dismissed, with costs of both courts to defendants.

The other Justices concurred.